

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 AUG 16 PM 4: 00

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TROY A. AUTIN, II** | * | CIVIL ACTION |
| **versus** | * | NUMBER: 03-2309 |
| **TEEN CHALLENGE INTERNATIONAL, ET AL.** | * | JUDGE FELDMAN |
| | * | MAJ. WELLS ROBY |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, Teen Challenge International ("TCI"), respectfully moves for summary judgment with regard to plaintiff's constitutional claims under 42 U.S.C. § 1983, the Eight Amendment to the Constitution of the United States of America, and the Louisiana Constitution, Article 1, Section 20. The plaintiff, Troy A. Autin, II, has no possible constitutional claim against movant because movant is not a person acting under color of state law, as required to state any cognizable Constitutional claim against it. In the alternative, plaintiff has not demonstrated: (1) that movant acted with deliberate indifference to his serious medical needs; or (2) movant failed to allow plaintiff to practice his own religion, and forced an unwelcome religion on him. There

680832_1 DOC

Fee_____
Process_____
**X** Dktd_____
CtRmDep_____
Doc. No._____

being no material facts to resolve at trial with respect to plaintiffs constitutional claims,

movant prays for judgment dismissing those claims as a matter of law.

Respectfully submitted,

**CHAFFE, MCCALL, PHILLIPS,
TOLER & SARPY, L.L.P.**

_____

DOUGLAS R. HOLMES (Bar No. 23996)
MAURICE C. RUFFIN (Bar No. 28747)
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
*Attorneys for Teen Challenge
International*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all

counsel of record by depositing same in the United States Mail, postage prepaid, this

___ day of August, 2004.

_____

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TROY A. AUTIN, II** | * | CIVIL ACTION |
| | * | |
| **versus** | * | NUMBER: 03-2309 |
| | * | |
| **TEEN CHALLENGE INTERNATIONAL,** | * | JUDGE FELDMAN |
| **ET AL.** | * | |
| | * | MAJ. WELLS ROBY |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## STATEMENT OF UNCONTESTED FACT

Defendant, Teen Challenge International ("TCI"), respectfully submits this statement of uncontested fact in support of its motion for summary judgment.

1.  The Greater New Orleans Teen Challenge, Inc. ("GNOTC") operates a drug/alcohol rehabilitation program for troubled youths such as the plaintiff. TCI has no involvement in the operations of GNOTC.

2.  Defendants, Greater New Orleans Teen Challenge ("GNOTC"), Greg Dill, Gary Bentley and TCI are private citizens.

3.  Plaintiff was not imprisoned at or involuntarily confined to GNOTC or TCI.

4. Plaintiff asked Judge Marullo for help and voluntarily enrolled in the GNOTC program in order to obtain treatment for his drug problem.

5. Plaintiff was free to leave the GNOTC program at any time.

6. From a criminal perspective, plaintiff remained free on probation during his enrollment in the GNOTC program.

7. Treating individuals with drug problems is not exclusively a state function.

8. There is no evidence that the state regulated or controlled GNOTC or TCI in any way that is relevant to the conduct of which plaintiff complains in his lawsuit.

9. Any decisions allegedly made by GNOTC regarding plaintiff's medical treatment were wholly internal affairs guided by GNOTC's own policy and practice.

10. GNOTC does not replace the State in the fulfillment of state incarceration responsibilities but merely provides parolees such as the plaintiff with the opportunity to rehabilitate.

11. Plaintiff was supervised by probation officers during his enrollment in the GNOTC program.

12. Plaintiff had no serious medical needs during his enrollment in the GNOTC program.

13. Movants did not wantonly or willfully refuse to address any medical needs of the plaintiff during his enrollment in the GNOTC program.

14. GNOTC took reasonable measure to abate all medical needs of the plaintiff, regardless of whether they were serious.

15. Any medical treatment the movants allegedly denied the plaintiff was not likely to result in serious medical consequences.

16. GNOTC did not know at the time that any of the medical conditions of which plaintiff complained presented a substantial risk of serious harm.

17. Plaintiff was not harmed by any alleged delay in his medical treatment.

18. Plaintiff consented to participate in the religious aspects of the GNOTC, which were disclosed to him in advance.

Respectfully submitted,

**CHAFFE, MCCALL, PHILLIPS,
TOLER & SARPY, L.L.P.**

DOUGLAS R. HOLMES (Bar No. 23996)
MAURICE C. RUFFIN (Bar No. 28747)
2300 Energy Centre
1100 Poydras Street
New Orleans, LA   70163-2300
Telephone:  (504) 585-7000
*Attorneys for Teen Challenge
International*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by depositing same in the United States Mail, postage prepaid, this _16th_ day of August, 2004.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TROY A. AUTIN, II** | * | CIVIL ACTION |
| **versus** | * | NUMBER: 03-2309 |
| **TEEN CHALLENGE INTERNATIONAL, ET AL.** | * | JUDGE FELDMAN |
| | * | MAJ. WELLS ROBY |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendant, Teen Challenge International ("TCI"), respectfully moves for summary judgment with regard to plaintiff's constitutional claims under 42 U.S.C. § 1983, the Eighth Amendment to the Constitution of the Untied States of America, and the Louisiana Constitution, Article 1, Section 20. The plaintiff, Troy A. Autin, II, has no possible constitutional claim against TCI because this defendant is not a person acting under color of state law, as required to state any cognizable Constitutional claim against it. In the alternative, plaintiff has no demonstrated: (1) that the defendant acted with

deliberate indifference to his serious medical needs; or (2) that the defendant failed to allow plaintiff to practice his own religion, and forced an unwelcome religion on him.

Upon resolution of the federal question claims, only pendent state tort law claims against these defendants will remain.

## I.

## BACKGROUND FACTS

Greater New Orleans Challenge ("GNOTC") owns and operates two facilities for troubled youths, one a boarding house in New Orleans, the other a camp in Winn Parish, Louisiana. GNOTC operates the Winn Parish facility under the trade name Mount Grace Teen Challenge.[1]

TCI is a private, non-governmental entity that licenses its name to local Teen Challenge operators. TCI does not operate any of the facilities at issue in this case nor does it employ any of GNOTC's employees. In addition, TCI does not have any involvement in the operation of the GNOTC program.[2]

Plaintiff is a twenty-three year old high school drop-out who has been convicted of two felonies, possession of a controlled substance and simply escape.[3] Plaintiff enrolled in GNOTC's "Teen Challenge" rehabilitation program on August 2, 2002.[4] At the time, he was involved in proceedings before Orleans Parish Criminal District Judge

---

[1] Affidavit of Greg Dill, Exhibit 1; affidavit of Gary Bentley, Exhibit 2. (Both affidavits are attached to GNOTC's, Gary Dill's and Gary Bentley's Motion for Summary Judgment and are incorporated herein for all purposes).
[2] Affidavit of Greg Dill, Exhibit 1.
[3] Exhibit 3, the March 29, 2004 Deposition of Troy Autin ("Depo. 1 hereinafter"), at pages 10, 25-26. (Attached to GNOTC's Motion for Summary Judgment and incorporation herein for all purposes).
[4] Affidavit of Greg Dill, Exhibit 1.

Frank Marullo because he had violated the terms of his probation on the simple escape conviction by failing a drug screen.[5] Judge Marullo allowed the plaintiff to remain free on probation, but modified its terms to require that plaintiff complete the Teen Challenge program.[6]

Plaintiff entered the Teen Challenge program voluntarily after asking Judge Marullo for help and out of a desire to be rehabilitated.[7] Before he enrolled, defendant Greg Dill, founder and executive director of GNOTC, interviewed the plaintiff for an hour and advised him of al details of the program, including its religious aspects.[8] Plaintiff knew before he enrolled that the program is non-denominational Christian, not Catholic, his religion.[9] Plaintiff states in his application to the Teen Challenge program that denomination "doesn't matter, we all love God."[10] Upon entering the program the plaintiff read and signed, voluntarily, a "Civil Rights Waiver Acknowledgment,"[11] which provides that:

> I, Troy Autin, understand that I have civil rights guaranteeing... exercising the religion of my choice. TEEN CHALLENGE is an evangelical Christian discipleship ministry for people with life controlling problems. As such, I realize and submit to the ministry's expectations to attend Christian religious activities coordinated by the ministry...
>
> I voluntarily give my consent allowing the staff to exercise these procedures.

---

[5] Depo. 1, page 12.
[6] Depo. 1, pages 12, 17, 46-47, 55-57.
[7] Depo. 1, pages 34-35, 39, 46, 54.
[8] Affidavit of Greg Dill, Exhibit 1.
[9] Depo. 1, pages 41, 42-44.
[10] Depo. 1, page 49.
[11] Depo. 1, pages 52-53 – the Civil Rights Waiver Acknowledgment form is Exhibit C to Depo. 1.

I fully understand my rights and what I am waiving.

While enrolled in the program, certain religious aspects of the program became distasteful to the plaintiff.[11]  However, he did not mention a religious objection to anyone at the program, other than to ask an unidentified person one time why they criticized Catholicism.[12]

All students, including Mr. Autin, are free to leave the Teen Challenge program at any time for any reason.[13]  However, because Mr. Autin was admitted through the intervention of court personnel, Teen Challenge was responsible for reporting any voluntary departure of the court.[14]  Mr. Autin knew that he could leave the Teen Challenge program at any time, but he believed that if he left he would go back to jail.[15]

On September 5, 2002, a spider bit the plaintiff while he was enrolled at the Teen Challenge New Orleans facility.[16]  The plaintiff advised Greg Dill and requested medical attention; however, Mr. Dill replies that the bite was nothing, just a pimple.[17]  Plaintiff required hospital treatment; however, Mr. Dill allegedly refused.[18]  Plaintiff's condition worsened and after a few days he was permitted to go the hospital, where he received antibiotics and pain medication.[19]  Plaintiff has produced records showing that he was seen at the Ochsner Clinic Foundation Emergency Department on September 7, 2002, then

---

[11] Depo. 1, page 61.
[12] Depo. 1, pages 62-64.
[13] Affidavit of Greg Dill, Exhibit 1, Affidavit of Gary Bentley, Exhibit 2.
[14] Affidavit of Greg Dill, Exhibit 1.
[15] Depo. 1, pages 54-56, Depo. 2, pages 23, 28. "Depo. 2" refers to the second deposition of Troy Autin, taken May 11, 2004, attached as Exhibit 4.
[16] Depo. 1, page 66-68.
[17] Depo. 1, page 66.
[18] Depo. 1, page 69.
[19] Depo. 1, page 72.

admitted to the hospital on September 10, 2002 for a stay which lasted through September 13, 2002.[20] Plaintiff admits that Teen Challenge initially refused him medical treated for the first spider bit only because they thought it was a pimple, and because they just didn't think it was that bad.[21]

On October 15, 2002, the plaintiff sustained an ingrown toenail;[22] however, Teen personnel staff allegedly refused medical treatment until October 21, 2002.[23] During that time the plaintiff's foot was swollen and he walked with a limp; however, Teen Challenge personnel allegedly required that he deliver flyers advertising Dominoes Pizza.[24] Plaintiff admits that Teen Challenge personnel refused him medical treatment for the ingrown toenail because they thought it wasn't bad, everyone gets them, and it will go away.[25]

Thereafter, plaintiff was transferred to the Mount Grace Teen Challenge facility in Winn Parish where, on December 6, 2002, he was allegedly bitten by another spider.[26] Teen Challenge personnel allegedly told the plaintiff that he was all right, called him a "wuss" and "spiderman," and accused him of lying.[27] Gary Bentley, the resident director of Mount Grace Teen Challenge, put him on bed rest for several days and fed him broth.[28] Eventually, the plaintiff received medical treatment at a hospital. Plaintiff has produced records showing that he was admitted to Winn Parish Medical Center for emergency

---

[20] The records are attached to plaintiff's initial disclosures, Exhibit 5.
[21] Depo. 1, page 74-75, Depo. 2, page 65.
[22] Depo. 1, page 73.
[23] Depo. 1, page 73. Plaintiff has produced a letter dated October 21, 2002 from Ochsner Health Plan authorizing a series of podiatrist visits. Plaintiff attached this letter to his initial disclosures, Exhibit 5.
[24] Depo. 1, page 73.
[25] Depo. 1, pages 74-75, Depo. 2, page 65.
[26] Depo. 1, page 75.
[27] Depo. 1, pages 75-76, Depo. 2, page 30.
[28] Depo. 2, pages 30-31.

treatment on December 9, 2000, complaining "I think I have a spider bite."[29] Plaintiff advised that the bit had occurred two and a half-days ago. The records document a "mild" severity insect bit and a small pustule. Plaintiff presented in 'NAD" – no acute distress. The records show that he was discharged from the emergency room, status unchanged, to "him." When he returned, Teen Challenge personnel allowed him some bed rest, but also allegedly required that he perform work assignments that were contrary to his doctor's orders."[30]

After visiting the emergency room on December 9, 2002, the plaintiff returned to Mount Grace Teen challenge. His condition worsened, and on December 11, 2002, he returned and was admitted to the hospital, where he allegedly stayed for four days receiving treatment for the second spider bite.[31] Plaintiff has not produced any records documenting this hospitalization. Plaintiff left the Teen Challenge program on December 13, 2002.

Finally, plaintiff also claims that he injured his left shoulder as the result of work requirements involved in the Teen Challenge program.[32] Plaintiff reported in his Student Application that he didn't have any physical ailments that would prevent him from performing manual labor.[33] He exercised by lifting weights.[34] At the time of his

---

[29] These records are attached to plaintiff's initial disclosures, Exhibit 5.
[30] Depo. 2, pages 25, 34-36.
[31] Depo. 2, page 17.
[32] Depo. 2, page 38, 71-72.
[33] Depo. 2, page 68. The references are to Exhibit A of Depo. 1, the plaintiff's Student Application to the GNOTC program.
[34] Depo. 2, pages 65, 74-75.

deposition plaintiff was working as a carpenter, framing houses.[35] However, the plaintiff claims that he had had rotator cuff surgery as a teenager, and that he so advised Teen Challenge, orally, at the time he entered the program.[36] Plaintiff claims that his shoulder once temporarily popped out of its socket, and that Teen Challenge personnel told him it was nothing.[37] Plaintiff alleges in his lawsuit that he needs corrective surgery.[38] However, in his deposition he testified that his doctor gave him a choice between surgery and therapy, and he chose therapy because surgery could do more harm than good.[39]

TCI had no knowledge of plaintiff's injury. Even if it did, which is denied, plaintiff was responsible for his own medical expenses. According, TCI has no financial or other motivation to deny its studies medical care.[40]

Additional facts are set forth in the Statement of Uncontested Fact submitted herewith.

## II.

## LAW AND ANALYSIS

A. DEFENDANT IS A PRIVATE PERSON WHO CANNOT BE LIABLE FOR PLAINTIFF'S CONSTITUTIONAL CLAIMS.

TCI is a private citizen. Plaintiff's lawsuit against movant is premised on federal question jurisdiction because, plaintiff asserts, this action arises under U.S.C. § 1983, the Eight Amendment to the Constitution of the United States of America, and the Louisiana

---

[35] Depo. 2, page 53-58.
[36] Depo. 2, page 39-44.
[37] Depo. 2, page 46.
[38] Complaint, paragraph 26.
[39] Depo. 2, page 47.
[40] Affidavit of Greg Dill, Exhibit 1.

Constitution, Article 1, Section 20. Specifically, the plaintiff claims that GNOTC, Greg Dill, and Gary Bentley and TCI failed to attend to his medical needs and interfered with his medical treatment, failed to allow him to practice his own religion, and forced an unwelcome religion on him.

Plaintiff's action for damages in only sustainable under 42 U.S.C. § 1983. *Thomas v. Shipka,* 818 F.2d 496, 499-500 (6th Cir. 1987). (In cases where a plaintiff states a constitution claim under 42 U.S.C. 1983, that statute is the exclusive remedy for the alleged constitutional violations.). 42 U.S.C. § 1983 provides that every person depriving another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the third party injuries in an action at law, suit in equity, or other proper proceedings for redress."

To state a claim for relief in an action brought under § 1983, plaintiff must establish that he was deprived of a right security by the Constitution or laws of the Untied States, and that the alleged deprivation was committed "under color of state law." *Rendell-Baker v. Kohn, Mass.,* 102 S.Ct. 2764, 457 U.S. 830, 838, 73 L.Ed.2d 418 (1982); see also *American Mfrs. Mut. Ins. Co. v. Sullivan,* 199 S.Ct. 977, 526 U.S. 40, 143 L.Ed.2d 130, 143 (1999). "[T]he under-color-of-state-law element of sect. 1983 excludes from its reach 'merely private conduct, no mater how discriminatory or wrongful." Id.

Under 42 U.S.C. § 1983, a plaintiff can only recover damages against a *private* entity if the alleged infringement of federal rights is "fairly attributable to the state." *Frazier v.*

*Board of Trustees of Northwest Mississippi Regional Medical Center,* 765 F.2d 1278 (5th Cir. 1985) (emphasis added).

Courts used several different formulas to determine whether conduct is 'fairly attributable to the state." Under the state compulsion (or coercion) test, a private entity may be subject to § 1983 liability if the State has exercised coercive power or provided significant overt or covert encouragement such that the acts of the private entity must constitute state action. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 166, 98 S.Ct. 1729, 1738-39, 56 L.Ed.2d 185 (1978). The joint action test transforms a private party into a state actor if his behavior makes him a "willful participant in joint action with the state or its agents. *Hernandez v. Grubbs,* 2003 U.S. District LEXIS 12774, P.4 (E.D. La. 2003), *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 387 (5th Cir. 1985). Additionally, a private party may be considered a state actor for purposes of § 1983 if the private party willfully participate in a conspiracy with the State or with one of its employees to commit the challenged conduct. *Denis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. A183, 186, 66 L.Ed.2d 185 (1980). Finally, under the nexus test, an otherwise private actor can be deemed a state actor if there exists "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the State itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). One avenue for establishing the required nexus is to show that the powers and authorities the private party exercised is "traditionally the exclusive prerogative of the State." *Jackson, supra* 419 U.S. at 353, 95 S.Ct. at 454.55.

9

The plaintiff in this case is relying on the latter theory and has alleged that defendants were performing functions exclusively reserved to the states (See Plaintiff's Opposition to GNOTC, Greg Dill, and Gary Bentleys Motion for Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)). Specifically, plaintiff alleges that he was placed in the program by court order due to a violation of his probation. Plaintiff implies that this "intern" him was equal to involuntary confinement and that the defendants are state actors by virtue of their alleged authority to "intern" him. Plaintiff's argument is without merit.

(1)     Plaintiff's alleged "internment" at GNOTC did not constitute involuntary confinement and TCI did not contribute to his confinement in any way.

Plaintiff was not imprisoned at or involuntarily confined to Teen Challenge. By his own admission, plaintiff asked the court to help and voluntarily enrolled in the Teen Challenge in order to obtain treatment for his drug problem. He was non imprisoned – he admitted that he was free to leave at any time. From a criminal perspective, he remained free on parole. This does not amount to involuntarily confinement or imprisonment.

(2)     GNOTC functions as a non-denominational drug/alcohol rehabilitation program, and therefore does not perform an exclusively public function. TCI played no role in GNOTC's program.

GNOTC does not perform a state imprisonment function.   It is a non-denominational drug/alcohol rehabilitation program for troubled youths.   Treating individuals with drug problems is not exclusive at state function.   *Greene v. McMillan,* 573

F.Supp. 632, 634 (N.D. Ohio 1983). In *Green*, the court held that no state action was involved in the dismissal of an employee by a private, nonprofit corporation, where the decision was made by private corporate officials not acting under any compulsion of state regulation, notwithstanding that the corporation received county, state, and federal funding. Id.

(3)     Assuming, *arguendo*, that plaintiff was placed in the custody of GNOTC, custody is not enough to impose public actor status on a private entity such as TCI, if the private entity is not performing an exclusively public function.

Case law indicates that a private entity which is not performing an exclusively public function does not become a public actor by virtue of having an individual placed in its custody. It has been held that it is not an exclusive function of the State to care for an protect minors who are adjudicated to be abused and neglected by their natural parents. *Letisha v. Morgan*, 855 F.Supp. 943 (N.D. Il. 1994). Hence, where the State places the children who are removed from the custody of their natural parents into a private facility, there is no state action on the part of the private facility under § 1983. Id. In addition, a hospital does not become a state actor by participating in the civil commitment of a mentally ill individual. *Pino v. Higgs*, 75 F.3d 1461 (10th Cir. 1986); *Elison v. Garbarino*, 48 F.3d 1962 (6th Cir. 1985); *Rockwell v. Harvey*, 949 F.2d 1127 (11th Cir. 1992); *Spencer v. Lee*, 864 F.2d 1376 (7th Cir. 1989).

TCI is a private entity. Even if the plaintiff was ordered into the GNOTC program by the court, TCI remained a private non-supervisory entity, and did not become a state actor by virtue of any participation of its behalf.

(4)    The plaintiff has elicited no evidence that the State regulated or controlled TCI in any way, thereby making it responsible for the specific conduct allegedly committed by GNOTC or TCI. Hence, there is not a sufficiently close nexus between the state and the alleged Constitutional violations.

The Supreme Court has consistently required a sufficiently close nexus between the state and the challenged action, so that constitutional standards are involved only when it can be said that the state is "*responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982). Accordingly, it has been held that an alcohol rehabilitation center used by the state was not acting under color of state law where there was no evidence that the state controlled how and under what circumstances treatment would be administered by the center. *Scout v. city of Gordon*, 849 F.Supp. 687, 690 (D. Nebraska 1994). Furthermore, medical judgments made by private parties such as nursing homes, according to professional standards that are not established by the state, do not constitute state action even where the state licensed the facilities and subsidized their costs. *Blum, supra. See also Jarrell v. Chemical Dependency Unit of Acadiana*, 791 F.2d 373, 374 (5th Cir. 1986) (per curriam) (assuming *argendo* involuntary commitment might be state action but hold treatment inside hospital was not connected to state).

Similarly, where there is extensive state regulation of a private entity, personnel decisions that are not compelled or influenced by state regulations do not constitute state action. *Rendall-Baker, supra; United States v. International Brotherhood of Teamsters,* 941 F.2d 1292 (2nd Cir. 1991) Such decisions are wholly internal affairs, guided by personnel policy and practice. *Henderson v. Center for Community Alternative,* 9111 F.Supp. 689, 708 (S.D.N.Y 1996).

Plaintiff has adduced no evidence that the state regulated or controlled GNOTC or TCI in any way. Plaintiff has also offered no proof that TCI exhibited control over GNOTC. Specifically, there is no evidence that the state regulated or controlled the practices, policies, or personnel decisions of GNOTC or TCI such that it can be said that the state was responsible for the specific conduct alleged by plaintiff. Any decisions allegedly made by GNOTC regarding plaintiff's medical treatment were "wholly internal affairs" guided by GNOTC's "policy and practice." Since GNOTC is not a state actor with respect to plaintiff's claims and TCI had no control over GNOTC'Ss actions, TCI also is not a state actor. Simply stated there is not a sufficient close nexus between the state and the alleged Constitutional violations.

(5)     GNOTC was providing a service that the state would not provide in its absence, and TCI provided no service at all.

Privately owned entities providing services that the State would not necessarily provide do not become state actors even when they are extensively regulated. Id. at 693, citing *Blu,* 457 U.S. at 1011, 102 S.Ct. at 2789. In *Henderson,* a private non-profit

organization ran a program called the Youth Advocacy Project (YAP), which served as an alternative to detention for juvenile offenders, most of whom were charged with felony offenses and who were detained at a Juvenile Detention Center. Id. The goal of YAP was preventing recidivism through intervention, including community support and supervision. Id. Referrals to the program were initiated primarily by defense counsel, courts, and staff members at the Juvenile Detention Center. Id. If the court released the juvenile from detention conditioned upon participation in YAP, a case manager would be assigned to have daily contact with the juvenile for up to one year following release. Id.

The court held that the private entity was assisting, but did not replace, the state in the fulfillment of its incarceration and rehabilitation responsibilities and was not a state actor for purpose of § 1983 and the First Amendment. Id. at 709. First, advocating for the release of juveniles was outside the exclusive province of the state and contrary to the public function of incarcerating and detaining such offenders. Id. Second, juveniles would not be given the opportunity by the state to participate in this type of program in the absence of the private organization and would remain in detention. Id. Third, New York statutes placed probationers and non-parole eligible inmates released for rehabilitative programs in the custody of the department of corrections and under the supervision of the state division of parole. Id. Placement of a probation officer was an additional indication that the entity was neither substituted for nor acting as a surrogate for the state. Id. Finally, that New York law had indicated that alternatives to incarceration serve the public interest did not convert it into a public function. Id.

Drug/alcohol rehabilitation services would be unavailable, or less readily available, in the absence of private entities such as GNOTC and TCI. Like the private organization in *Henderson,* the defendants do not replace the state in the fulfillment of state incarceration responsibilities but merely provide individuals with the opportunity to rehabilitate. Hence, providing drug/alcohol rehabilitation as an alternative to incarceration is not an exclusively public function.

State action is also required under the Louisiana Constitution, Article 1, Section 20, which plaintiff cites as an additional basis of recovery. *Pellerin-Mayfield v. Goodwill Industries, Sela, Inc.,* No. Civ. A. 02-3774, at page 4, 2003 WL 22174279 (E.D. La. February 12, 2003), citing *Smolensky v. General Electric Company,* No. Civ. A. 99-1849, at 9, 2000 WL 341031 (E.D. La. March 30, 2000) and *Hornsby v. Enterprise Transportation Co.,* 987 F.Supp. 512 (M.D. La. 1997).

Correctly interpreted, TCI is not duplicating the exercise of any power traditionally reserved exclusively to the state. In fact, TCI executed no power, either governmental or private over the plaintiff. Therefore, movants were not acting under color of the state law at the time of the alleged constitutional violation. Plaintiff can only recover damages for constitutional violations if the defendant is a state actor. Because TCI's is a private actor, plaintiff's constitutional claims have no merit and must be dismissed.

B.  IN THE ALTERNATIVE, PLAINTIFF HAS NOT SHOWN THAT DEFENDANT ACTED WITH DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS, AS REQUIRED TO STATE A CONSTITUTIONAL VIOLATION UNDER § 1983.

To succeed on a claim for damages under § 1983 for inadequate medical care, a convicted prisoner must demonstrate that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Hare v. City of Corinth,* 74 F.3d 633, 650 (5th Cir. 1996). Only deliberate indifference, "an unnecessary and wanton infliction of pain... or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord *Gregg v. Georgia,* 428 U.S. 153, 182-83 (1976). The Supreme Court has defined "wanton" as follows:

> Wanton means reckless – without regard to the rights of others... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.

*Smith v. Wade,* 461 U.S. 30, 39 n. 8, S.Ct. 1625, 1632 N.8, 75 L.Ed.2d 632 (1983).

The Supreme Court recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Board of the County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1391 (1997). The "deliberate indifference' standard permits courts to separate omissions that "amount to an intentional choice" from those

that are merely "unintentionally negligent oversight[s]." *Southard v. Texas Bd. of Crim. Justice,* 114 F.3d, 551 (5th Cir. 1997) (citations omitted) (emphasis added). ""Subjective recklessness,"" as used in the criminal law, is the appropriate tests for deliberate indifference." *Farmer* at 838-40.

Deliberate indifference means that a prison official is liable "only if he known that the inmates face a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it. " *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). The *Farmer* definition applies to Eighth Amendment medical claims. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994). The Fifth Circuit has held that "the facts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985), citing *Woodall v. Foti,* 648 F.2d 268 (5th Cir. 1981). Accordingly, summary judgment is proper "where the materials before the Court fail to raise genuine issues as to facts which, if true, would clearly evince the medical need in question and indicate that the denial of treatment was much more likely than not to result in serious medical consequences, and additionally that the defendants had sufficient knowledge of the situation so that the denial of medical care constituted wanton disregard of the prisoner's rights." Id. If the Court finds that one of the components of the test is not met, it need not address the other component. *Davis v. Scott,* 157 F.3d 1003, 1006 (5th Cir. 1998).

Therefore, the plaintiff must first establish that there was a serious medical need. To determine what constitutes a serious medical need, Courts employ an objective

17

inquiry, assessing the potential harm of denying treatment of the condition. *Victoria W. v. Larpenter,* 0-1960 (E.D. La. 3/15/01), 2001 W 263080, citing *Mendoza v. Lynaugh,* 989 F.2d 191, 193 (5th Cir. 1993). Where denial or delay of treatment would incur substantial harm and unnecessary suffering, a serious medical need exists. Id. Further, a mere delay in receiving medical care is insufficient to create 1983 liability unless harm resulted. *Mendoza v. Lynaugh,* 989 F.2d 191, 193 (5th Cir. 1993).

Examples of serious medical needs are heart attack symptoms, a hand injury that could result in permanent disability, and a diagnosed need for prescribed psychotropic medication. Examples of needs that Courts have found to not be sufficiently serious are failure to administer acetaminophen and ice for swollen areas after a fall, minor dental repairs, and cold-like symptoms. *Abrams v. Jones,* 03-2278 (E.D. La. 5/28/04), 2004 WL 1197099 (Cut on head and minor eye injury from fight were not serious medical needs); *Martin v. Gentile,* 849 F.2d 363, 871 (4th Cir. 1998) (small cut with some bleeding was not a serious medical need); *Wesson v. Oglesby,* 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists with some bleeding did not constitute serious medical need); *Palmer v. Johnson,* 193 F.3d 346 (5th Cir. 1999) (missing one meal and enduring irritating insect bites without immediate medical attention did not rise to the level of a cognizable constitutional injury).

Plaintiff has alleged that he suffered two spider bites, an ingrown toenail, and aggravation of a pre-existing shoulder injury. However, plaintiff has presented no evidence that these alleged injuries constitute serious medical needs. Indeed, the case law indicates that such minor maladies are not serious enough to form the basis of a

constitutional claim. Further, there is no competent evidence that the alleged delay or denial of treatment for these injuries was much more likely than not to result in substantial harm or serious medical consequences, or that harm, in fact, resulted.

The plaintiff must also establish that the defendant possessed a culpable state of mind. *Farmer, supra* at 838 (citing *Wilson v. Seiter,* 501 U.S. 294, 298) (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

The plaintiff has failed to present any evidence that TCI had the requisite knowledge to give rise to deliberate indifference. Plaintiff has not produced any evidence that TCI was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. More importantly, TCI took no actions nor did it have any policies or procedures that could be construed as giving rise to deliberate indifference.

Plaintiff's "deliberate indifference claim has no merit and must be dismissed.

C.   PLAINTIFF HAS FAILED TO SHOW ANY DEROGATION OF HIS FIRST AMENDMENT RIGHTS.

At paragraph 30 of the Complaint, plaintiff asserts that the defendants violated plaintiff's civil rights "by not allowing him to practice his own faith, but rather requiring petitioner to worship in the Pentecostal Faith, despite representations made to the Court that the Teen Challenge Programs were a non-profit drug rehabilitation program"

As explained above, plaintiff cannot recover damages for any alleged deprivation of his constitutional rights because TCI is not a state actor.

Further, because plaintiff consented to the religious aspects of the program, there was no violation of his rights. Defenses at common law are available under 42 U.S.C. § 1983, and the section is to be read in harmony with general principles of tort defenses. *Imbler v. Pachtman,* 424 U.S. 409, 418, 96 S.Ct. 984, 988, 47 L.Ed.2d. 128 (1976); *Pouncey v. Ryan,* 396 F.Supp. 126, 128 (D.C. Conn. 1975). Under Louisiana law, "[t]he existence of consent means that the defendant did not commit a tort." *Landry v. Bellanger,* 2002-C-1443, p. 11, (La. 5/20/2003); 851 So.2d 943, 952, citing David Robertson, *The Louisiana Law of Comparative Fault: A Decade of Progress,* 1 Louisiana Practice Series 5 (Louisiana Judicial College, 1991), at p. 6-7. By executing the Civil Rights "Civil Rights Waiver Acknowledgement and otherwise consenting to the religious aspects of the program, plaintiff waived any possible freedom of religion claim arising out of this situation.

Plaintiff may contend that his consent was not truly voluntary because he had no real choice: he had to choose between enrolling in the program or incarceration. Plaintiff testified that if he hadn't asked Judge Marullo for help, Judge Marullo might have revoked his probation and sent him back to prison for years.[41] Plaintiff admitted, however, that he has no person knowledge on this point, and no way of known what Judge Marullo would

---

[41] Depo. 1, page 36.

have done had he not enrolled in the Teen Challenge program.[42] He also testified that he would have wanted to rehabilitation anyway.[43]

Further, the religious character of the program was clearly disclosed. Through the Civil Rights Waiver Acknowledgement, GNOTC informed the plaintiff that he had "civil rights guaranteeing... exercising the religion of [his] choice," but that as a condition of enrolling in the program, participation in evangelical Christian religious activities would be expected.[44] The plaintiff not only signed this form, he also stated in his application that denomination doesn't matter, "we all love God."

In sum, plaintiff consented to participate in the religious aspects of the Teen Challenge program, which are disclosed to him in advance. There is no reasonable basis to question that the plaintiff's consent was voluntary, deliberate, and informed, which should be sufficient to establish movants defense as a matter of law. See, *Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1184, 94 L.Ed.2d 405 (1987) (A release of claims under 42 U.S.C. § 1983 is effective as it is voluntary, deliberate and informed).

In *Town of Newton,* the plaintiff was arrested and charged with witness tampering. The prosecutor later agreed to dismiss the criminal charges if the plaintiff agreed to release any civil rights claims he might have against the defendants. The Supreme Court rejected the plaintiff's claim that the release-dismissal claim should be invalid because it arose out of unduly coercive circumstances. In so ruling, the court endorsed the principle that criminal defendants are capable of consent, noting that "the criminal process, like the rest

---

[42] Depo. 1, pages 37-38.
[43] Depo. 1, page 39.
[44] Depo. 1, page 49.
680832-1

21

of the legal system, is replete with situations requiring the making of difficult judgments as to which course of follow. 107 S.Ct. at 393. "In other contexts [referring to plea bargaining,] criminal defendants are required to make difficult choices that effectively waive constitutional rights. Id. "Although a defendant may have a right, even of constitutional dimensions, to follow whatever course he chooses, the Constitution does not by that token always forbid requiring him to choose." 107 S.Ct. at 394,

Here, plaintiff consented to the details of the Teen Challenge program. The defense of consent has been established as a matter of law. Accordingly, his freedom of religion claims must be dismissed.

## III.

## BURDEN OF PROOF, INVOLVEMENT OF DEFENDANT TEEN CHALLENGE INTERNATIONAL, CONCLUSION

Under the *Federal Rules of Civil Procedure,* Rule 56, summary judgment for a defendant shall be granted if the pleadings, depositions and affidavits on file show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Further, the rule mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential t that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). In that case the rule requires the non-moving party, here the plaintiff, to go beyond the pleadings and by her own affidavits, or by the depositions and other admissible evidence, designate specific facts showing that there is a genuine issue for trial. *Celotex Corporation v. Catrett,*

477 U.S. 317, 324, 106 S.Ct. 2548, 2555 (1986). The non-movant must do more than demonstrate some factual disagreement; the issue must be material. The non-movant fails to demonstrate a genuine issue for trial when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Logan v. Commercial Union Insurance Company,* 96 F.3d 971, 978 (7th Cir. 1996).

Here, the plaintiff must prove that TCI is a state actor in order to recover on any of his constitution claims. To prevail on his Eight Amendment and Louisiana constitutional claims, plaintiff must establish that TCI deliberately indifferent to his serious medical needs. In view of Rule 56, TCI must designate specific facts at this time to show that these are genuine issues for trial, and support those contentions with evidence.

Regarding the freedom-of-religion claim, TCI has established the defense of consent. In view of the plaintiff's consent, and further, because TCI is not a state actor, plaintiff's freedom-of-religion claim has no merit as a matter of law and must be dismissed.

For those reasons, TCI respectfully prays for summary judgment with respect to plaintiff's claims under the Louisiana and United States Constitutions, and 42 U.S.C. § 1983.

Respectfully submitted,

**CHAFFE, MCCALL, PHILLIPS,
TOLER & SARPY, L.L.P.**

_____

DOUGLAS R. HOLMES (Bar No. 23996)
MAURICE C. RUFFIN (Bar No. 28747)
2300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-2300
Telephone:  (504) 585-7000
*Attorneys for Teen Challenge
     International*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all

counsel of record by depositing same in the United States Mail, postage prepaid, this

16th day of August, 2004.

_____

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TROY A. AUTIN, II** | * | CIVIL ACTION |
| | * | |
| **versus** | * | NUMBER: 03-2309 |
| | * | |
| **TEEN CHALLENGE INTERNATIONAL,** | * | JUDGE FELDMAN |
| **ET AL.** | * | |
| | * | MAJ. WELLS ROBY |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF HEARING

PLEASE TAKE NOTICE that, Teen Challenge International ("TCI") will bring on for hearing on Wednesday, September 1, 2004, at 10:00 o'clock a.m., before the Honorable Martin Feldman at the United States District courthouse for the Eastern District of Louisiana, 500 Camp Street, New Orleans, Louisiana, the accompanying Motion for Partial Summary Judgment.

Respectfully submitted,

**CHAFFE, MCCALL, PHILLIPS,
TOLER & SARPY, L.L.P.**

_____
DOUGLAS R. HOLMES (Bar No. 23996)
MAURICE C. RUFFIN (Bar No. 28747)
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
*Attorneys for Teen Challenge
International*

681027_1.DOC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by depositing same in the United States Mail, postage prepaid, this 16th day of August, 2004.

_____